## A. ANDERSON ET AL. *v.* MARY WILSON.

**Vendor and Purchaser—Outstanding Title Bond.**

If the original purchaser of land had knowledge of an outstanding title bond executed by the vendor, such knowledge can not affect remote vendees without knowledge of such fact, who were innocent purchasers for value.

**Vendor and Purchaser—Outstanding Equity—Innocent Purchaser.**

Where a vendee has the legal title and is an innocent purchaser, he can pass title to a third person, who has knowledge of the outstanding equity, and the latter will be protected by his purchase of the legal title.

**Vendor and Purchaser—Outstanding Equity—Notice.**

The purchaser of the legal title to land is not affected by an outstanding equity, unless he has actual notice thereof, or there are such recitals in the chain of title under which he claims as amounted to constructive notice.

**Vendor and Purchaser—Equitable Claim—Notice of Purchaser.**

In order to affect one who holds the legal title to land by purchase, he must have had such notice as enabled him to know of the equitable claim.

APPEAL FROM HART CIRCUIT COURT.

October 22, 1873.

OPINION BY JUDGE PRYOR:

On June 10, 1869, one of the appellants, A. Anderson, being the owner of about twenty-three or twenty-four acres of land adjoining Cave City, and a portion of it within the boundary of the town, sold by executory contract to the appellee, Mary Wilson, one acre of this land, the same being within the town limits. The sale was for the nominal consideration of one dollar, the appellant, Anderson, declining to take more, in consideration, as the appellee alleges, of the previous kindness of the appellee shown Anderson and his family. Anderson not making title to the land, this suit was instituted to enforce its performance not only against Anderson, but to recover its possession of the vendees of Anderson, it being alleged in the petition that they were purchasers with notice of appellee's claim.

Anderson relied upon a subsequent cancelment of the contract, for the reason that the appellee failed to improve the property by building upon it, insisting that that constituted a part of the consideration, although not mentioned in the bond for title. The real value of the lot at the time of the sale was fifty dollars. Shortly after this bond for title was executed, a party had been employed to build a particular fence between this lot and one adjacent, and the proof shows that Mrs. Wilson declined to pay for her part of the fence or the work upon it, stating that she was not able to improve it. Anderson then paid for his part of the labor. There seems to have been much excitement in the effort to obtain lots in the enterprising little town as early as the year 1860, the value of lots and town property at that date beginning to improve much in value. The sale and transfer of

title, and the building of houses was the common subject of conversation with the citizens of the town and its vicinity. In the year 1862, Anderson sold this tract of land, including this acre in controversy, to a man by the name of Lock. In 1864 or 1865, Lock sold to Utlys. In 1865 Utlys sold to Hardy. In 1865 Hardy sold to G. W. Thompson. Thompson sold a part of this acre to Mason, and he to Webb and Caldwell. The sale of Anderson to Lock was by executory contract; Lock assigned the bond to Utlys and Utlys to Hardy. Anderson made to Hardy a deed, having received two-thirds, or at least, one-half the purchase money for the property, and retaining a lien in the deed for the balance due. Hardy made a deed to Thompson and retained a lien in that deed for what was due from him to Anderson for the land. Thompson sold this acre to Mason and Gavin, and received the purchase money, and Mason sold a part of his purchase to Caldwell, who has not paid all of his purchase money to Mason.

Anderson had the possession of this land, including the acre in controversy, and the actual possession of it was transferred to each successive vendee in the order of purchase from 1862 to 1865. A house and livery stable was built on this acre of land by these vendees of Anderson; they listed it for taxation and paid the taxes thereon; and with this notorious claim and possession, no actual notice was given or claim asserted by the appellee to this property against any of these vendees, or even Anderson, until a short time prior to the institution of this action in November, 1866. The appellee lived within two miles of the town, and although in bad health, was occasionally in the place. She lived with her son-in-law, White, who seems to have been active in the prosecution of this claim. She had also a son-in-law, Palmer, who lived near and owned property in the town. With all these opportunities of asserting her claim as against those, at least, who were innocent vendees, no attempt is made by even an assertion of claim to recover this property until this suit is instituted. Hogan swears that she told him she had abandoned her purchase, and although his testimony is attempted to be impeached, he is not only sustained by the testimony of others who speak of hearing the appellee announce her intention to abandon the property, but by circumstances so strong as to establish clearly the defense of Anderson. This was regarded

as one of the most desirable lots in Cave City. Shortly after the town began to increase rapidly in population, and no owner or bona fide claimant of such property would have neglected to take the possession, or stand by and see it pass through the hands of five or six vendees without attempting to disturb their right.

It may be conceded, however, that the bond was never cancelled, and still it was error to render judgment against the parties in possession. Hardy had obtained a deed to the property, and he had conveyed it to Thompson, and the latter to the parties in possession or those claiming under them. No notice is shown as against those holding the legal title of appellee's claim. The mere payment of part of the purchase money is not to be regarded as notice of an outstanding equity, except to say to the vendee, "If you buy this, you purchase subject to this lien." Thompson swears that he had no notice, and under the law as it now is, no lien can be asserted unless retained in the deed of this claimant of the appellee, and if Lock, the original purchaser. by executory contract, had known of this bond for title, and its validity not questioned, it could not affect remote vendees who were innocent purchasers for value, who had obtained the legal title. The deeds were made to Hardy and Thompson before the suit was brought. So was the deed from Thompson to Mason; and still, while Mason is protected, his vendees and Caldwell are held not to be innocent purchasers. If the vendee has the legal title and is an innocent purchaser he can pass this title to a third party, and this third party, although he may know of this outstanding equity, is protected by his purchase of the legal title, and so with Gavin. He bought of Thompson. The latter had a deed for the property. He was an innocent purchaser, and how Gavin, who buys from Thompson, is made a purchaser in bad faith, we cannot well see. When liens exist for the purchase money, either in the deed or in accordance with the law before the adoption of the Revised Statutes, if the contract was made prior to that time, notice of these liens would make a subsequent vendee liable, that is, if a lien is retained in the original deed, that is, notice to every subsequent vendee, although the subsequent deeds retain no lien.

A purchaser of the legal title can not be affected by an outstanding equity unless he has actual notice, or unless there are

such recitals in the chain of title under which he claims as would amount to constructive notice. Clark v. Hunt, 3 J. J. Marshall, 558. A purchaser with notice may protect himself under the deed of his vendor. This principle is understood to apply particularly in cases where an older equity is attempted to be asserted as against the title, and even where the party sued is the original purchaser by deed from the one selling prior thereto by bond. To affect the legal title-holder, he should have such notice as would enable him to know that the equitable right was really claimed. This property was at one time sold at auction, and the claims of those improving the property under the legal title for years as notorious as a possession and assertion of ownership could make it, whilst the appellee, with a latent equity, is attempting to recover from these legal title holders upon proof of the property being at one time called Mrs. Wilson's lot. The judgment of the court below is reversed and cause remanded with directions to dismiss appellee's petition.

*Noble, for appellants.*

*Joseph H. Lewis, for appellee.*